UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLYN ALLEN,

No. 13-11318

        Plaintiff,

District Judge Denise Page Hood

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Charlyn Allen ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further development consistent with this opinion.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on July 1, 2010, alleging disability as of June 17, 2009 (Tr.

-1-

108).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held

on August 11, 2011 in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ")

Kathleen Eiler (Tr. 28).  Plaintiff, represented by attorney Daniel Pollard, testified, (Tr. 31-

42), as did vocational expert ("VE") Toni McFarland (Tr. 42-45).  On October 12, 2011, ALJ

Eiler found Plaintiff not disabled (Tr. 24).

On January 25, 2013, the Appeals Council declined to review the administrative

decision (Tr. 1-3).  Plaintiff filed suit in this Court on March 25, 2013.  On March 20, 2014,

the undersigned conditionally granted Plaintiff's motion, through her attorney, for the

withdrawal of same attorney, allowing Plaintiff 14 days to object and an additional 30 days,

if she chose, to obtain new counsel.  *Docket #15.*   The order states that in the event that

Plaintiff did not obtain counsel within the prescribed time, the pending motions would be

decided on the pleadings.  *Id., Docket #8, 13.*  Plaintiff has not objected, obtained new

counsel, or otherwise communicated with this chamber.  The Court has considered both her

former attorney's arguments for remand as well other possible grounds for remand.


## II.  BACKGROUND FACTS

Plaintiff, born October 31, 1965, was just short of her 46th birthday at the time of the

administrative decision (Tr. 24, 108).  She completed two years of college and worked

previously as a bus driver, day care worker, and medical ward clerk (Tr. 128).  She alleges

disability due to bipolar disorder, depression, migraine headaches, fibromyalgia, and

Attention Deficit Hyperactivity Disorder ("ADHD") (Tr. 127).

### A. Plaintiff's Testimony

 Plaintiff offered the following testimony:

She had not worked since June, 2009 due to ADHD, depression, fibromyalgia, migraines, cervical stenosis, sleep apnea, and daytime sleepiness due to depression and sleep apnea (Tr. 32). She experienced problems concentrating and was unable to multitask (Tr. 32). Her condition obliged her to take up to two naps a day, lasting anywhere from one to three hours (Tr. 32).

Plaintiff's migraine headaches were precipitated by stress and the overuse of her arms and shoulders (Tr. 32). Topomax lessened migraine frequency and severity but did not eliminate it (Tr. 32). Her migraine headaches were accompanied by sensitivity to light and sound and on rare occasions, nausea and vomiting (Tr 33). She took Requip for restless leg syndrome (Tr. 33). She started taking a new medication for ADHD only two to three weeks before the hearing (Tr. 34). Her husband had noticed that she was less irritable since beginning the new medication (Tr. 36). None of her previous medications for ADHD improved the condition (Tr. 34). Plaintiff declined her psychiatrist's recommendation to undergo electric shock therapy for depression (Tr. 35). She was currently attending therapy sessions approximately once every three weeks (Tr. 36).

Plaintiff  lived with her husband, noting further that she was currently watching her two grandchildren, ages four years and five months, while her daughter was at work (Tr. 38).

-3-

She babysat for a total of 20 hours each week (Tr. 38). She required breaks every 15 to 20 minutes while performing household chores and was unable to lift more than 15 pounds or sit for more than "an hour or two" before requiring a position change (Tr. 37). She denied socializing, but noted that she was currently helping her daughter plan an out-of-town move (Tr. 37). She reported the side effect of sleeplessness and shakiness from her former ADHD medication but denied current side effects (Tr. 40). She experienced sleep disturbances, low energy, and feelings of guilt and worthlessness (Tr. 41). Fibromyalgia caused continual body aches and as a result of cervical stenosis, she experienced intermittent finger numbness (Tr. 41).

### B. Medical Records

#### 1. Treating Records

A February, 2007 x-ray of the cervical spine was negative for fractures or other abnormalities (Tr. 288). December, 2007 imaging studies of the cervical spine showed degenerative disc disease at C5-C6 (Tr. 233). Rheumatologist Jolanta Sobotka, M.D. found Plaintiff's complaints of body pain "most compatible with fibromyalgia" (Tr. 206, 325). January, 2008 EMG studies of the upper extremities were negative for Carpal Tunnel Syndrome or other abnormalities (Tr. 235, 323). An MRI of the cervical spine showed moderate foraminal narrowing at C7-T1 but no other significant abnormalities (Tr. 231, 284). A May, 2008 x-ray of the lumbar spine was unremarkable (Tr. 280). A June, 2008 work evaluation found that Plaintiff's job performance as a ward clerk required improvement in

several areas including attention to detail, handling stress, and working independently (Tr. 172-173).

Physical therapy intake notes from the same month state that Plaintiff exhibited a normal gait but tenderness at L5-S1 (Tr. 314). Notes from later the same month state that Plaintiff reported that "overall," her symptoms were not decreasing after four treatment sessions (Tr. 311). She was discharged following two consecutive "no shows" (Tr. 311). November, 2008 "pain management" records state that back pain had improved (Tr. 310). Plaintiff reported neck pain and radiculopathy of the upper extremities but exhibited good cervical mobility and normal reflexes (Tr. 310). The report noted "no clinical evidence of radiculopathy" (Tr. 310).

In January, 2009, Dr. Sobotka remarked that recent steroid injections had provided only temporary relief (Tr. 308). He recommended the use of a cervical collar (Tr. 308). In April, 2009, neurologist James Stathakios, Jr., M.D. conducted an initial evaluation, noting Plaintiff's reports of lower extremity radiculopathy (Tr. 303). Plaintiff reported good results from Lyrica and Cymbalta (Tr. 304). Dr. Stathakios noted good reflexes and a normal gait and coordination (Tr. 307). He noted the possible presence of low back pain, fibromyalgia, arthritis, and neck pain (Tr. 307). Dr. Sobotka's May, 2009 notes state that Plaintiff's symptoms of fibromyalgia were improved with Lyrica (Tr. 201).

The same month, neurologist Hugo Lopez Negrete, M.D. examined Plaintiff, finding the possible presence of "pain syndrome" (Tr. 300). He advised against further injections

-5-

2:13-cv-11318-DPH-RSW   Doc # 16   Filed 05/27/14   Pg 6 of 18   Pg ID 560

but recommended "physical activity and exercise" (Tr. 300). EMGs of the upper extremities were unremarkable (Tr. 298). Neurologist Jaime Ballesteros, M.D. observed 5/5 strength in all extremities (Tr. 296). A July, 2009 MRI of the brain was unremarkable (Tr. 282). In August, 2009, Dr. Ballesteros noted that migraines were well controlled with medication (Tr. 294). The following month, an MRI of the thoracic spine was negative for abnormalities (Tr. 281).

April, 2010 psychological intake notes by List Psychological Services note Plaintiff's report of depression and Attention Deficit Disorder ("ADD") (Tr. 385). Leticia G. Kimpo, M.D. recommended therapy and a change in psychotropic medicine (Tr. 387). Dr. Kimpo assigned Plaintiff a GAF of 65[1] (Tr. 387). Therapy notes from the following month state that Plaintiff was less depressed and was sleeping better (Tr. 384). A June, 2010 medication review, finding a GAF of 68, noted that Plaintiff's prognosis was "good" (Tr. 369). The same month, Plaintiff terminated therapy, reporting that she was less depressed but experienced fatigue and low motivation (Tr. 360-361). Dr. Kimpo found that Plaintiff experienced "moderate to marked impairment" in concentration but otherwise only mild psychological limitations (Tr. 361). August, 2010 medical treating notes state that Plaintiff reported good results from Cymbalta (Tr. 391, 400). An October, 2010 x-ray of the right knee was negative for abnormalities (Tr. 412).

---

[1]

GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 32 ("*DSM-IV-TR*")(4th ed.2000).

-6-

April, 2011 therapy notes state that as a result of functional limitations due to depression and ADHD, she had a GAF of 50[2] (Tr. 466). Notes created the following month indicate a GAF of 55 to 60[3] (Tr. 467). In July, 2011, S. Nagarkar, M.D. found that Plaintiff experienced moderate limitations in interacting with supervisors or coworkers and understanding, remembering, and carrying out complex instructions; marked limitations in the ability to interact with the public; and extreme limitations in the ability to maintain concentration and withstand work related stress (Tr. 469).

## 2. Non-Treating Records

In March, 2010, Thomas L. Seibert, M.S. administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") along with other measures of cognitive ability (Tr. 176-197). Plaintiff arrived punctually for the examination and showed good grooming (Tr. 176-177). She reported that poor concentration had caused school, work, and social problems (Tr. 178). She also reported good results from "medication to improve her ability to focus . . ." (Tr. 178). She denied having to repeat grades or take special education classes and reported above average grades in college (Tr. 179). She was fired from her hospital job after yelling at a coworker and failing to finish a project, but had submitted over 100 job applications since being terminated (Tr. 180). She denied current problems with depression

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR* at 34.

[3]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 34.

(Tr. 180). Her goals were to prevail in her lawsuit against her former employer and to be at ease in talking to others (Tr. 181).

Plaintiff scored in the borderline to average range of intelligence (Tr. 182-187) with a full scale IQ of 78 (Tr. 186). Seibert found that her learning style was consistent with a diagnosis of ADHD (Tr. 188). He noted a probable diagnosis of bipolar disorder (Tr. 192). He recommended that she resume taking medication for ADHD and resume vocational training or college studies (Tr. 195). He recommended further that Plaintiff "consider a return to owning and operating her own daycare facility" (Tr. 196, 347). Medical treating notes from the same month state that Plaintiff reported less fatigue and less snoring after beginning the use of a C-PAP device (Tr. 243, 405). In April, 2011 a Quantitative EEG performed by Thomas M. Starzynski, M.S. (signed by Ramesh Chheda, M.D.) found frontal lobe activity consistent with a "disorganized thought process[]" and the inability to process information in a timely fashion (Tr. 440). He found that the EEG results were consistent with a diagnosis of ADD (Tr. 439). He recommended cognitive and behavioral therapy combined with "neuro-feedback training" (Tr. 441).

In August, 2011 psychologist Dr. M.J. Grosenbach performed an ADHD assessment, noting Plaintiff's report of slow academic and social progress during her formative years (Tr. 443-444). He diagnosed Plaintiff with ADHD and a depressive disorder, recommending "psychiatric intervention and intensive outpatient mental health involvement" (Tr. 455-456).

-8-

2:13-cv-11318-DPH-RSW   Doc # 16   Filed 05/27/14   Pg 9 of 18   Pg ID 563

## C. Vocational Testimony

VE McFarland classified Plaintiff's former work as a child monitor, bus driver, and ward clerk as exertionally medium and semiskilled[4] (Tr. 43). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work experience:

> [A]ssume that this person can perform work at the light exertional level. She can never climb ladders, ropes or scaffolds. Occasionally crawl, frequently climb ramps or stairs, unlimited ability to stoop, kneel or crouch. Frequently grasp, handle or finger with bilateral upper extremities. Avoid concentrated exposure to temperature extremes, vibration and workplace hazards such as moving machinery and unprotected heights. She retains the mental capacity to perform routine 1-2 step tasks. Occasionally interact with supervisors and coworkers, but should never interact with the general public. Works best alone or in a small familiar group. Could this person perform any of the claimant's past work? (Tr. 43-44).

The VE responded that given the hypothetical limitations, the above-limited individual would be unable to perform any of Plaintiff's past relevant work but could work as a small products assembler (2,100 positions in the lower peninsula of Michigan); router (5,000); and courier (1,300) (Tr. 44). She stated that if individual were limited to sedentary rather than

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

light work, it would allow the work of a document preparer (3,000); semi-conductor bonder (2,000); and assembler (5,000) (Tr. 45). She testified that if the individual were off task for 20 percent of the day due to concentrational problems, all work would be precluded (Tr. 45).

### D.  The ALJ's Decision

Citing the medical and therapy records, ALJ Eiler found that Plaintiff experienced the severe impairments of fibromyalgia, migraines, degenerative disc disease, sleep apnea, depression, ADD/ADHD, and borderline intellectual functioning but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). As to the mental impairments, the ALJ found that Plaintiff experienced mild limitations in activities of daily living, moderate social limitations, and marked limitations in concentration, persistence, and pace (Tr. 17). The ALJ determined that Plaintiff had the  Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [She] can never climb ladders, ropes, or scaffolds, but can frequently climb ramps or stairs. She can occasionally crawl but has an unlimited ability to balance, stoop, kneel, or crouch. The claimant can frequently grasp, handle, or finger with her bilateral upper extremities. She should avoid concentrated exposure to temperature extremes, vibration, and workplace hazards, such as moving machinery and unprotected heights. The claimant retains the mental capacity to perform routine, one and two-step tasks. She can occasionally interact with supervisors and coworkers, but should never interact with the general public. The claimant would work best alone or in a small, familiar group (Tr. 18).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could work as a small products assembler, router, or

courier (Tr. 23-24).

The ALJ discounted Plaintiff's allegations that she was unable to perform even unskilled work. The ALJ noted that symptoms of sleep apnea were resolved with the use of a C-PAP device (Tr. 20). She also noted that Plaintiff voluntarily ceased psychological therapy after obtaining good results from Paxil (Tr. 21). The ALJ found that despite Plaintiff's psychological limitations, she had been able to obtain an associate's degree in medical billing and run a day care business for 10 years (Tr. 21). The ALJ rejected Dr. Nagarkar's August, 2011 assessment, in part, on the basis that the treating relationship had been "limited" (Tr. 22). He also noted that Dr. Nagarkar's opinion of "extreme restrictions was inconsistent with the treating source's assignment of a GAF score reflecting only moderate psychological limitation (Tr. 22).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either

-11-

2:13-cv-11318-DPH-RSW   Doc # 16   Filed 05/27/14   Pg 12 of 18   Pg ID 566

way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).


## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."
*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### The Hypothetical Question

### A.  Plaintiff's Argument

Plaintiff argues that the hypothetical question to the VE did not account for her full

degree of impairment. *Plaintiff's Brief* at 6-13, *Docket #8* (citing Tr. 43-44)*.*  She contends

that the omission of critical psychological and physical limitations from the hypothetical

question invalidates the Step Five finding that she was capable of a significant range of other

work.  *Id.* at 7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

As argued by Plaintiff, the question of whether the ALJ erred by omitting the alleged

limitations from the hypothetical question depends in large part on whether her credibility

determination was supported by substantial evidence.  *See Stanley v. Secretary of Health and*

*Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly

discredited allegations of limitation in  hypothetical to VE).  The credibility determination,

guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the

adjudicator must consider whether there is an underlying medically determinable physical

or mental impairment. . .that can be shown by medically acceptable clinical and laboratory

diagnostic techniques." 1996 WL 374186 at *2.  The second prong of SSR 96-7p directs that

whenever a claimant's allegations regarding "the intensity, persistence, or functionally

limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [5]

The ALJ's credibility determination is well supported. Despite Plaintiff's claims of upper extremity radiculopathy, the ALJ cited imaging studies showing only "mild" degenerative disc disease of the cervical spine (Tr. 20). In rejecting Plaintiff's allegations of physical limitation, the ALJ also relied on imaging studies of the pelvis, extremities, and brain showing unremarkable results (Tr. 20). She noted that the condition of sleep apnea responded well to the use of a C-PAP device (Tr. 20). She found that Plaintiff responded well to her various physical and psychological conditions when "adher[ing] to her prescribed regimen," noting that Plaintiff voluntarily ceased psychological therapy in July, 2010 (Tr. 20-21). In support of the RFC, the ALJ cited the conclusions of Judy Strait, Psy.D. who found that Plaintiff's psychological limitations did not prevent the performance of "routine, 2-step

_____

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

-14-

tasks on a sustained basis" (Tr. 22 citing 59).

### B.  A Basis for Remand

Nonetheless, grounds for remand exist.  The hypothetical limitations forming the basis of the VE's job testimony and the RFC do not account for the ALJ's ultimate finding that Plaintiff experienced marked limitations in concentration, persistence, and pace (Tr. 17, 43-44).  Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, "marked" deficiencies in concentration, persistence, or pace imply a greater degree severity than described by "simple tasks" or other similar modifiers. In contrast to "moderate" concentrational limitations, a finding of marked deficiencies is appropriate "if you cannot complete [simple] tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." *Id.* (emphasis added).

 In this case, the hypothetical question states only that the individual was limited to performing "routine 1-2 step tasks"[6] (Tr. 44).  In some instances, such limitations, with nothing more, could be sufficient to account for moderate concentrational limitations. *Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich.2011)(limitation of "one to two step tasks" adequate to address moderate limitations in concentration,

---

[6]

    In regard to the mental limitations, the question also stated that the individual could only "[o]ccasionally interact with supervisors and coworkers," "never interact with the general public" and would work "best alone or in a small familiar group" (Tr. 44).  However, these modifiers appear to address Plaintiff's moderate limitations in social functioning (Tr. 17) rather concentrational limitations.

-15-

persistence, or pace).   However, I am unaware of any case where "routine 1-2 step tasks" would account for Regulation's description of marked concentrational limitations.[7]  Because the hypothetical question did not account for the marked concentrational limitations found in the administrative opinion, it is unclear whether substantial evidence supports the VE's testimony that the hypothetical individual could perform the work of a assembler, router, or courier (Tr. 24, 44);  *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D. Mich.2003)(Roberts,J)(citing *Gallant   v.   Massanari,* 2001 WL 912406 (D.Me.2001))("Reversible error for ALJ to rely upon jobs erroneously listed by VE inconsistent with the administrative findings).

   As such, a remand is required. However, because the present transcript does not establish an "overwhelming" case for disability, the above discussed errors do not entitle Plaintiff to an automatic award of benefits. Indeed, it is unclear from the administrative opinion whether the ALJ erred by failing to provide a more restrictive hypothetical question, or, if the "marked" finding in the administrative opinion was merely a typographical error.

---

[7]

   Plaintiff's brief also contains a recitation of the "treating source rule," but is unaccompanied by any citation to a treating source opinion, much less how the ALJ erred in the analysis of the treating records.  I note that in August, 2011, Dr. Nagarkar opined that Plaintiff experienced extreme psychological limitations (Tr. 469).  The ALJ acknowledged the finding but noted that she gave "little weight" to the opinion based on (1) the "limited amount of treatment actually provided" by the treating source and, (2) the evaluation, while finding multiple "extreme" limitations, stood at odds with Dr. Nagarkar's finding that Plaintiff had a GAF of 60 - indicating moderate, rather than extreme psychological limitation (Tr. 22); see fn 3, above.  The ALJ noted Dr. Nagarkar's diagnosis of dysthymia indicated a lesser degree of psychological disorder than major depression (Tr. 21).

-16-

*Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). In either case, because the Court is unable to trace the ALJ's "path of reasoning," a remand for further proceedings is required. *Lowery v. Commissioner, Social Sec. Administration*, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995).

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further development consistent with this opinion.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

-17-

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 27, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 27, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen
